# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO ADONAY GALAN,<br>Petitioners,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | Case No. 2:26-cv-01283-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DENY RESPONDENTS' MOTION TO DISMISS<br><br>(ECF Nos. 1, 10)<br><br>ORDER DENYING PETITIONER'S MOTION TO APPOINT COUNSEL AS MOOT<br><br>(ECF No. 2) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted, Respondent's motion to dismiss be denied, and Petitioner be provided a bond hearing.

## I.

## BACKGROUND

Petitioner is a citizen of El Salvador who has multiple criminal convictions and has been removed from the United States multiple times. (ECF No. 10-1 at 3–4.[1]) On June 4, 2024, immigration officers arrested Petitioner after he met with his federal probation officer and

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

reinstated a prior removal order. Additionally, an asylum officer interviewed Plaintiff and found no reasonable fear. That determination, however, was overturned by an immigration judge ("IJ"), and Petitioner was placed in withholding only proceedings. (ECF Nos. 10-1, 10-2, 10-3.) On May 8, 2025, an IJ denied Petitioner's applications for relief from removal. On October 23, 2025, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. (ECF No. 10-4 at 2.) On February 24, 2026, the BIA denied Petitioner's motion to reopen. (ECF No. 10-4.) Petitioner appealed this decision to the Ninth Circuit and obtained a stay of removal. (ECF No. 10 at 2.)

Meanwhile, on March 13, 2025, an IJ held a bond hearing pursuant to Aleman Gonzales v. Barr, 955 F. 3d 762 (9th Cir. 2020), and found that the Department of Homeland Security ("DHS") had demonstrated by clear and convincing evidence that Petitioner is both a flight risk and a danger to the community and denied bond. (ECF No. 10-6.) Petitioner appealed this ruling to the BIA, which affirmed the findings of the IJ. (ECF No. 10 at 2.)[2]

On April 2, 2026, Petitioner filed a pro se petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1.) On April 27, 2026, counsel for Petitioner filed a notice of appearance. (ECF No. 9.) On May 1, 2026, Respondents filed a motion to dismiss the petition as moot because Petitioner previously received a bond hearing on March 13, 2025. (ECF No. 10.) To date, no opposition to the motion to dismiss has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Mootness

Respondents move to dismiss the petition as moot because Petitioner previously received a bond hearing on March 13, 2025. (ECF No. 10.) The jurisdiction of federal courts is limited to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477

[2] Respondents cite to Exhibit 7 for the BIA's ruling on the custody redetermination. (ECF No. 10 at 2.) However, Exhibit 7 is a copy of the BIA's February 24, 2026 decision denying Petitioner's motion to reopen. (ECF No. 10-7.)

(1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings," which "means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477).

"The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide." Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 862 (9th Cir. 2017) (citing Forest Guardians v. Johanns, 450 F.3d 455, 461 (9th Cir. 2006)). "An action 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" Bayer, 861 F.3d at 862 (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)). Here, the Court construes the petition as asserting that due process requires that Petitioner be provided a second bond hearing. See United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that pro se filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. We are specifically directed to construe pro se pleadings liberally. This duty applies equally to pro se motions and with special force to filings from pro se inmates." (internal quotation marks and citations omitted)). Accordingly, there is effective relief this Court can provide (*i.e.*, ordering a second bond hearing), and the undersigned recommends denying Respondents' motion to dismiss the petition as moot.

**B. Prolonged Detention**

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably

necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). In Diouf v. Napolitano (Diouf II), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit applied "the canon of constitutional avoidance and construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision" and held that "[s]uch aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community."[3] Diouf II, 634 F.3d at 1086.

In Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), the Ninth

---

[3] Diouf II did not explain "what procedures would apply to the bond hearings that [the Ninth Circuit] read into § . . . 1231(a)(6)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022). The Ninth Circuit "took up that question in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)," and relying on "general principles of procedural due process," held that "the government must prove by clear and convincing evidence that continued detention is justified based on the alien's flight risk or danger to the community," Rodriguez Diaz, 53 F.4th at 1199 (internal quotation mark omitted) (quoting Singh, 638 F.3d at 1200).

Circuit, applying the canon of constitutional avoidance, held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court found the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" fell "far short of a 'plausible statutory construction,'" and held that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 304, 296, 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit reexamined the applicable procedures for immigration detention under 8 U.S.C. § 1231(a)(6). Although "recogniz[ing] some tension between *Diouf II* and *Jennings*," the Ninth Circuit held that it "remain[ed] bound by *Diouf II*" and concluded that "that the district court did not err in relying on *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" and "also properly required the Government to bear a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed, holding that 8 U.S.C. § 1252(f)(1) deprived the district court of jurisdiction to entertain the requested class-wide injunctive relief. Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022). In Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022), "a companion case decided that

same day arising from the Third Circuit, . . . the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez* (which was itself based on *Diouf II*)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022). Arteaga-Martinez held that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence" and declined to reach the constitutional claims. 596 U.S. at 581, 583. "[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under" 8 U.S.C. § 1231. Rodriguez Diaz, 53 F.4th at 1201.

Petitioner contends "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and even absent a bright-line six-month standard, his "detention without *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at 9, 10.)

Courts in the Ninth circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context),

report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black v. Decker, 103 F.4th 133, 147 (2d Cir. 2024) ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 225 (3d Cir. 2018) (applying Mathews "[i]n order to identify 'the specific dictates of due process'" in the context of § 1231(a)(6) detentions), abrogated by Arteaga-Martinez, 596 U.S. 573. Some courts look to whether the petitioner is requesting an initial bond hearing or a second bond hearing in deciding whether to apply the Mathews test because "[w]hile the Mathews factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." Djelassi v. ICE Field Office Dir., No. C19-491-RSM, 2020

WL 263670, at *2 (W.D. Wash. Jan. 17, 2020) (quoting Banda, 385 F. Supp. 3d at 1118).

Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, and the fact that Petitioner is seeking a second bond hearing, the Court will apply the Mathews test. In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

1. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)).

However, the Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner received one bond hearing before an IJ where the government bore the burden of demonstrating that detention was warranted and acknowledges Petitioner's "private interests are further diminished by the fact

that he is subject to an order of removal from the United States." Rodriguez Diaz, 53 F.4th at 1208. Based on the foregoing, the undersigned recommends finding that the first Mathews factor weighs slightly in favor of Petitioner.

2. Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

On March 13, 2025, Petitioner had an individualized bond hearing before an IJ where the government had the burden of establishing by clear and convincing evidence that Petitioner posed a danger to the community or a flight risk if released. The IJ denied release, finding that DHS had demonstrated by clear and convincing evidence that Petitioner is both a flight risk and a danger to the community. (ECF No. 10-6.) Petitioner had the right to appeal that decision to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for release on bond, the decision "would also be subject to judicial review in habeas." Rodriguez Diaz, 53 F.4th at 1210. Like the petitioner in Rodriguez Diaz, the determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small'" at the time of Petitioner's first bond hearing. Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)).

After the Supreme Court's decision in Arteaga-Martinez, however, Petitioner does not have a statutory right to a bond hearing before an IJ. Applicable DHS regulations "generally

require a custody review at the end of the 90-day removal period, a second review by a panel at ICE headquarters after six months of detention, and subsequent annual reviews." Arteaga-Martinez, 596 U.S. at 583; 8 C.F.R. § 241.4. The noncitizen "may submit information in writing in support of his or her release" and "may be assisted by a person of his or her choice[.]" 8 C.F.R. § 241.4(h)(2). The regulations set forth criteria for release and factors to be weighed in considering detention or release. 8 C.F.R. §§ 241.4(e)–(f). Further, "[n]ot more than once every three months in the interim between annual reviews, the alien may submit a written request to the HQPDU [Headquarters Post-Order Detention Unit] for release consideration based on a proper showing of a material change in circumstances since the last annual review." 8 C.F.R. § 241.4(k)(2)(iii).

Although the Supreme Court has rejected the Ninth Circuit's application of the constitutional avoidance canon and its statutory interpretation of § 1231(a)(6), the Court finds Diouf II's discussion of the Mathews factors informative regarding the constitutional issues before this Court. With respect to the second factor, the Ninth Circuit found that "at the 180–day juncture, the DHS regulations are appropriate but not alone sufficient to address the serious constitutional concerns raised by continued detention" because the "regulations do not afford adequate procedural safeguards [as] they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge.[4]" Diouf II, 634 F.3d at 1091 (footnote in original). The Ninth Circuit subsequently rejected the argument that a noncitizen bearing the burden of proof at a bond hearing rendered § 1226(a)'s procedures constitutionally deficient. Rodriguez Diaz, 53 F.4th at 1210–12. However, § 1226(a) and its implementing regulations provide for the right to seek an additional bond hearing before an immigration judge based on materially changed circumstances, 8 C.F.R. § 1003.19(e), whereas a noncitizen detained under § 1231(a) may submit a written request for release consideration to an agency employee based on materially changed circumstances and a hearing is not required, 8 C.F.R. §§ 241.4(k)(2)(iii),

[4] Under the regulations, an in-person hearing is permitted, but not required. *See* 8 C.F.R. § 241.4(h)(1).

(h)(1). Thus, in the context of § 1231(a), "the risk of an erroneous deprivation of liberty in the absence of a *hearing* before a *neutral decisionmaker* is substantial" as the time in detention lengthens. Diouf II, 634 F.3d at 1092 (emphasis added).

Based on the foregoing, the Court finds that the second Mathews factor weighs slightly in favor of Petitioner. Again, the Court is cognizant that it should not overstate the strength of Petitioner's showing here. As noted above, Petitioner already had a bond hearing before an IJ where the government bore the burden of establishing by clear and convincing evidence detention was warranted. Additionally, unlike § 1226(c) where no additional procedures are mandated, DHS regulations provide annual custody reviews and Petitioner may request a new custody review once every three months based on materially changed circumstances.

3. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, "the governmental issue at stake [here] is the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (emphasis in original). See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal

orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers").

Accordingly, the undersigned recommends finding the third Mathews factor weighs in favor of Petitioner.

4. Conclusion

Based on the foregoing, the Court finds that each of the Mathews factors weighs in favor of Petitioner. Accordingly, the Court finds that Petitioner is entitled to a second bond hearing.

**C. Motion for Appointment of Counsel**

Petitioner has moved for appointment of counsel. (ECF No. 2.) However, on April 27, 2026, counsel filed a notice of appearance on behalf of Petitioner. (ECF No. 9.) Accordingly, the Court denies Petitioner's motion for appointment of counsel as moot.

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;
2. Respondent's motion to dismiss (ECF No. 10) be DENIED;
3. Respondents be directed to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and at which

a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203; and

b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

Further, Petitioner's motion for appointment of counsel (ECF No. 2) is DENIED as moot.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 29, 2026**

/s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE